UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

**IN RE:**

**BRITTANY DESHEA MACKIE**                    **CASE NO. 25-10768**
    **DEBTOR**                                      **CHAPTER 7**

## MEMORANDUM OPINION

The hearing on the Motion to Dismiss Case with a Bar to Refiling ("Motion to Dismiss")[1] came before the court on March 30, 2026.  The debtor, Brittany DeShea Mackie ("Debtor"), filed an Objection[2] to the Motion to Dismiss, testified at the hearing, and introduced exhibits that were admitted into evidence by the court.[3] La Capitol Federal Credit Union ("La Capitol") filed a Memorandum in Support[4] of the Motion to Dismiss and appeared at the hearing.

The United States Trustee seeks dismissal on two alternative grounds: 1) Debtor's case is presumptively abusive based on the means test pursuant to 11 U.S.C. § 707(b)(2), and/or 2) Debtor's case is abusive pursuant to § 707(b)(3).  The United States Trustee also contends that the facts support a one-year bar to refiling pursuant to 11 U.S.C. § 349(a).

## I  Procedural Background

Prior to this case, the Debtor filed a chapter 13 case on July 9, 2025.[5]  She sought and was granted an extension of time to file schedules through August 6, 2025.[6] On August 8, 2025, without filing schedules and other required pleadings, the Debtor filed a motion to dismiss her

---

[1] P-51.
[2] P-55. Although the Debtor's Objection was filed three days late pursuant to Local Rule 9014-1 and Standing Order 2025-1, the court considered the *pro se* Debtor's Objection.
[3] Debtor's i*n globo* Exhibit 1.
[4] P-57.  La Capitol asserts  an unsecured claim in the amount of $40,725.96 based on a vehicle that was purportedly repossessed pre-petition.  Proof of Claim 16.
[5] Case no. 25-10578.
[6] Case no. 25-10578, P-14.

case, simply representing that she did not want to remain in chapter 13.[7] The court dismissed the case on August 13, 2025.[8]

The Debtor's spouse, Tamyra Monique Mackie, filed a chapter 13 case on August 11, 2025.[9] She did not file schedules and did not appear at the meeting of creditors.[10] The court dismissed that case on September 26, 2025, pursuant to 11 U.S.C. § 521(i).[11]

The Debtor then filed the current case, again under chapter 13, on August 29, 2025. The meeting of creditors pursuant to 11 U.S.C. § 341 was set for October 10, 2025, but could not be held because the Debtor failed to appear. The court issued an Order[12] for the Debtor to appear on November 12, 2025, and show cause why the case should not be dismissed for failure to appear at the meeting of creditors. At the hearing, Debtor's counsel represented that the Debtor wished to convert her case to chapter 7. Shortly thereafter, the Debtor filed an Ex Parte Motion to Convert Case,[13] and on November 30, 2025, the court ordered that the case be converted to chapter 7.[14] The Debtor appeared at the meeting of creditors on February 3, 2026.[15] On February 4, 2026, the United States Trustee filed a Statement of Presumed Abuse pursuant to § 704(b)(1)(A),[16] and subsequently filed the Motion to Dismiss, which includes a request for a one-year bar to refiling, on March 2, 2026.[17]

---

[7] Case no. 25-10578, P-23.
[8] Case no. 25-10578, P-27.
[9] Case no. 25-10687.
[10] Case no. 25-10687, P-23.
[11] Case no. 25-10687, P-28.
[12] P-18.
[13] P-23.
[14] P-25.
[15] P-39.
[16] P-42.
[17] P-51.

**II. Sections 707 and 349 of the Bankruptcy Code**

Initially, the court must consider the language of section 707(b)(1) of the Bankruptcy Code; it provides in pertinent part that a bankruptcy court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, … if it finds that the granting of relief would be an abuse of the provisions of this chapter." The Debtor represented in her Summary of Assets and Liabilities that her debts are primarily consumer.[18] In determining whether the granting of relief would be abusive or in bad faith under the Bankruptcy Code, the court turns to sections 707(b)(2) and (3).

Section 707(b)(2) presents parameters for determining whether a debtor's chapter 7 case is presumed to be abusive based on whether the debtor's income is such that the debtor has the ability to pay creditors pursuant to a chapter 13 plan. Section 707(b)(3) provides additional grounds for dismissal when that presumption of abuse does not arise.

In this case, the United States Trustee contends that the Debtor's case is presumptively abusive pursuant to section 707(b)(2) based on the income the Debtor represented in her means test. The United States Trustee also contends that even if the court determines that either the section 707(b)(2) presumption did not arise or was rebutted, the Debtor's case should be dismissed pursuant to section 707(b)(3) based on bad faith.

**A. Section 707(b)(2)**

Section 707(b)(2)(A)(i) provides:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

---

[18] P-10, p. 1.

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $10,275, whichever is greater; or

(II) $17,150.

Of note, the Debtor did not file a new means test after conversion of this case to chapter 7. The United States Trustee relies on the debtor's chapter 13 means test. The Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period[19] shows monthly income from her business, B & T Mackshot, as $19,657 and her yearly income as $235,884. The Debtor calculated her monthly disposable income pursuant to § 1325(b)(2) as $5,352.95, after subtracting her total adjustments of $14,304.05 from her monthly income of $19,657.[20] According to the Debtor's own calculations, when you multiply the Debtor's monthly disposable income by 60, she greatly exceeds the threshold of $17,150 for presumptive abuse.

The Debtor seeks to rebut that presumption. Section 707(b)(2)(B) provides the circumstances in which a presumption of abuse may be rebutted; it provides:

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

---

[19] P-10, pp. 33-35.
[20] P-10, pp.36-45.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $10,275 , whichever is greater; or
(II) $17,150.

In *In re Hanks*,[21] the court held that the "'"debtor bears the burden of proof under both the procedural and substantive factors."[22]  In *In re Jackson*,[23] the court found:

Although courts generally agree that "special circumstances" should be decided on a case-by-case basis, courts are divided over what constitutes a special circumstance. This Court has previously held that "[§] 707(b)(2)(B) leaves discretion with the court to account for differences between individual debtors" and that "the determination whether a particular circumstance is special should be made on a case-by-case basis."

The Debtor contends, rather vaguely to say the least, that her income has decreased and introduced voluminous and convoluted bank statements and cash app statements into evidence without accompanying testimony, a right of cross examination, or explanation.  The court then took the matter under advisement in large part to review the statements to see if the Debtor, who is not represented by counsel, rebutted the presumption of abuse.  The Debtor has not filed Amended Schedules I and J or the Official Form 122A-1, styled "Chapter 7 Statement of Your Current Monthly Income" since her case was converted on her own motion.  The court finds that the Debtor has not carried her burden[24] to show "special circumstances" to a degree necessary to rebut the presumption of abuse. Given the ruling under section 707(b)(2) of the Bankruptcy

[21] *In re Hanks*, 618 B.R. 185 (Bankr. W.D. La. 2020).
[22] *Id*. at 188 (quoting *In re Martin*, 505 B.R. 517, 521 (Bankr. S.D. Iowa 2014)).
[23] *In re Jackson*, No. 19-41723-MXM, 2020 WL 4785542, at *5 (Bankr. N.D. Tex. May 4, 2020).
[24] The court notes that cases finding the debtor has the burden of proof fail to mention specifically whether the burden if a preponderance standard or a higher one.  This court specifically makes this ruling on a preponderance standard.

Code, the court need not address the United States Trustee's alternative argument for dismissal under section 707(b)(3)

### B.  Section 349 Bar to Refiling

The United States Trustee requests that the Debtor be barred for one year from filing another petition, alleging that the Debtor has filed two petitions in the last year, and her spouse has filed one as well during that short period.  Section 349 of the Bankruptcy Code does afford the court some leeway, for cause shown, to prohibit a subsequent filing for a specified time following dismissal.  Had this case been one where the debtor and the non-filing spouse had "tag-teamed" petitions as part of a scheme to get lasting benefits of the automatic stay to thwart multiple foreclosure efforts on a house or other property, the court would view this request in a different light.  The Debtor does not own a home and the sole objecting creditor here, La Capitol Federal Credit Union, repossessed its collateral before the first filing.  Indeed, its arguments in support of dismissal read more like a complaint challenging the discharge of its debt under section 523 of the Bankruptcy Code.  The deadline to file such a complaint has long since come and gone.[25]

The court finds that these multiple filings should not result in a bar to refiling.  Indeed, the Debtor obtained no unfair advantage at all with respect to the automatic stay and her property.  That might not be the case if the Debtor files again, but that decision is left, if at all, for another day.

---

[25] This opinion should not be construed as deciding one way or the other the issue as to what unsecured claim La Capitol Federal Credit Union may have against the estate following repossession of its collateral.

**III. Conclusion**

For these reasons, this case is dismissed for the Debtor's failure to rebut the presumption of abuse under section 707(b)(2) of the Bankruptcy Code.  However, the dismissal will not be accompanied by a discretionary bar to refiling under section 349 of the Bankruptcy Code.

Baton Rouge, Louisiana, April 13, 2026.

<u>**/s/ Michael A. Crawford**</u>
MICHAEL A. CRAWFORD
UNITED STATES BANKRUPTCY JUDGE